## BERNAYS VS. FEILD et al.

1. VENDOR'S LIEN: *Is assignable.*
   The lien of a vendor who executes a bond for title, inures to the benefit of an assignee of the purchase money note.

2. — *In case of reässignment to vendor without recourse..*
   The effect of the reässignment, to the vendor, of the purchase money note, *without recourse,* is to unite in him the debt and the right to enforce satisfaction under the lien for which he had contracted. This case distinguished from *Williams v. Christian*, 23 Ark., 255.

Bernays vs. Feild et al.

3. — *When the vendor has parted with his security.*

But when the vendor, who also held under a title bond, has transferred it before the reässignment of the note, the foregoing rule does not apply.

4. ESTOPPEL EQUITABLE.

The vendors of land whose bond for title had been assigned required their vendee to pay a note for the purchase money, which they had transferred to a nonresident, to a confederate receiver, before they would comply with the conditions of their bond in favor of the assignee; and by that and other acts induced the assignee to pay other incumbrances and accept a deed to the land. Afterward the note which they had required paid to the receiver was reässigned to them. *Held,* that they were estopped to enforce it against the assignee of their bond for title.

APPEAL from the *Pulaski* Chancery Court.

Hon. T. D. W. YONLEY, Chancellor.

*Rose & Garland,* for appellants.

*M. W. Benjamin, contra.*

WALKER, J. The material facts out of which the questions of law arise in this case, are: that James Douglass, the owner of certain lots of land in the city of Little Rock, sold them to Feild and Dolly, for the price of $550, and for the payment of which they executed to Douglass several promissory notes, thereafter to become due, and Douglass, in consideration thereof, executed to Feild and Dolly his bond, conditioned, that if Feild and Dolly should pay him the notes so executed, he, Douglass, would convey the lots to them by deed. Thereafter, Feild and Dolly sold the lots to Rector, for the sum of $3,500, who in part payment of that sum assumed to take up the notes executed by Feild and Dolly to Douglass, and execute to him his (Rector's) own notes, which was done, and to secure the further payment of said sum, Rector executed to Feild and Dolly his note for $1,422, in consideration of which Feild and Dolly executed to Rector their bond,

reciting the consideration and the amount due by note as part of the purchase money, and covenanted that upon the payment of said note they would assign to Rector, Douglass' bond to them for title.

Rector, for the consideration of five thousand dollars in confederate money, sold said lots to Bernays, and assigned Feild and Dolly's bond to him, and also by a written indorsement on the bond requested Field and Dolly to assign to Bernays, Douglass' bond, as the note for $1,422 had been fully discharged by payment to Rutherford. In compliance with this request, Feild and Dolly assigned Douglass' bond to Bernays, who, as the legal holder of the same, and upon the payment of Rector's notes to Douglass, procured from him a deed for the lots. The deed appears to have been executed on the 12th of June, 1863, and nearly three years after Feild and Dolly had assigned the note to Benedict, Hall & Co., residents of the city of New York, who, all the while until January, 1866, were the legal owners of the note, at which time Feild and Dolly settled their liabilities as assignors and took an assignment of the note from Benedict, Hall & Co., without recourse to them.

Upon the hearing of the cause in the court below, a decree was rendered in favor of Feild and Dolly, for the sum paid by them to Benedict, Hall & Co., against Bernays, decreed a specific lien on the lots for the payment of the same, with order of sale; that the cross bill of Rector and Bernays be dismissed, and that Bernays be enjoined from collecting a judgment in his favor against Rector for the money paid by him to Douglass.

From this decree both Bernays and Rector appealed.

It is contended, on the part of Feild & Dolly, that the specific lien reserved by them upon the lots for the payment of the purchase money, and which passed by assignment of the

notes to Benedict, Hall & Co., by force of the re-assignment of Benedict, Hall & Co. to them, reverted to them, and remained as perfect as if no assignment had ever been made. Whilst it is contended on the part of Bernays: 1. That the re-assignment to Feild & Dolly was without recourse, and that no lien passed with the debt by virtue of such assignment. 2. That if such would, ordinarily, be the effect of the assignment, and that the lien did follow the debt, still, by the acts and conduct of Feild & Dolly in this case, the lien was discharged, and that they are estopped by such acts from asserting their rights under it.

Douglass, who executed his bond for title upon the payment of the purchase money, held the naked legal title to the lots with a specific lien upon the lots for the payment of the purchase money; and the effect of the subsequent sales and assignment communicated subsequent liens upon the property for the payment of the purchase money upon the after sales, to be satisfied in their order, in the nature of subsequent mortgages. *Moore v. Anders*, 14 Ark., 626; *Smith v. Robinson*, 13 id., 534; *Sullivan v. Hardy*, 16 id., 145; *Veasy v. Watkins*, 18 id., 553.

And this lien enures to the benefit of the assignee of the note given for the payment of the purchase money, as fully as it did to the vendor. *Moore v. Anders*, 14 Ark., 626; *Sullivan v. Hardy*, 16 id., 145.

Benedict, Hall & Co. most clearly held a lien upon these lots for the payment of the note assigned to them; but it is contended that the re-assignment without recourse did not carry with it the lien, and in support of this position we have been referred to the case of *Williams v. Christian*, 23 Ark., 225.

Without intending to question the correctness of that decision under the state of case there presented, we feel satisfied that it has no application in a case like the present.

In the case of *Williams v. Christian*, the vendor assigned the

note without recourse, which was construed to mean that the assignee relied solely upon the solvency of the payer of the bill. But in this case the assignment was made to the vendor who had assigned the note, the effect of which was to unite in the vendor the debt and the right to enforce satisfaction under the lien for which he had contracted. In the case of *Kelly v. Payne*, 18 Ala., 371, it was held that, "If the vendor indorse the note and afterwards take it up, on the failure of the vendee to pay on maturity, or if the note comes back to his possession as his own, then, both the debt and the security for its payment are united again in the vendor, and he may enforce payment by subjecting the lands to its satisfaction."

Upon the authority of this decision, as well as upon principle, we must hold that by force of such assignment, the rights of Feild & Dolly became as full and perfect as if no assignment had ever been made; and may be as fully enforced unless they shall be found to have waived their rights, or are estopped from asserting them, of which we will proceed to consider.

In 1860, Feild & Dolly assigned the note of Rector for $1,422, to Benedict, Hall & Co., who sent it out to Wait for collection. The note was seized upon by Rutherford, the confederate revenue collector, and paid off by Rector in confederate money. Bernays, in his answer, which is responsive to the allegations of the bill, and being uncontradicted becomes evidence, says, that the note of Rector for $1,422, then under the control of the confederate receiver, was expressly required by Feild & Dolly to be paid off as an indispensable requisite to the contract then about to be made, and without which they would not part with their title bond on Douglass; and it was agreed that this should be done; and Feild & Dolly aver in their bill, that they caused Douglass to make to Bernays a deed for the lots.

Rector assigned Feild & Dolly's bond to Bernays, and requested, by written indorsement on the bond, that they should assign Douglass' bond to Bernays, as the note had been fully discharged and paid by Rutherford, the confederate receiver; in accordance with which request, Feild & Dolly assigned Douglass' bond for title to said Bernays, (in the language of the assignment) "with all and singular the rights and privileges we hold therein." These terms, in any fair interpretation, embrace all interests, all rights, and could scarcely have been more explicit, if in express language they had said "rights of lien." Feild & Dolly, at this time, had no interest in the note; they had transferred it to nonresidents, who could scarcely, in view of then existing circumstances, have had any knowledge of what was transpiring within the confederate lines. Rector was interested in making this payment in depreciated confederate currency. Feild & Dolly were interested in being relieved from their responsibility as indorsers. All of these acts tended to give assurance to Bernays, to consummate his purchase of the lots, and to pay the Rector notes to Douglass in order to get, as he supposed, a clear title, at least so far as related to Feild & Dolly; who, not only assigned to Bernays their bond for title, which in effect entitled him to all the rights held by Feild & Dolly under it, but also in express terms they assigned all the rights and privileges which they had acquired under the bond.

These several acts, we think, were amply sufficient to induce Bernays to pay off the incumbrance created by Rector's notes to Douglass for the purchase money, and accept the title from Douglass, which otherwise he would not have done; and when such is the case, the party inducing such contract is estopped from setting up any claim then existing against it, under the rule in equitable estoppels, which is, that " where one by word or conduct willfully causes another to believe in the existence

of a certain state of things, and induces him to act on that be-
lief, so as to alter his own previous conduct, the former is con-
cluded from averring against the latter a different state of
things as existing at the same time." 1 Spear's Equity, 550;
*Prather v. Frazier*, 11 Ark., 249.

The sale, as held in *Kelly v. Payne*, 18 Ark., above referred
to with approval, rests upon the assumption that a re-assign-
ment of the debt to the vendor unites in him the debt and the
security for its payment and is inapplicable in this case, because
before the time of the re-assignment of the note, Feild & Dolly
had parted with their security for payment by assignment to
Bernays, and a deed had been made to him by Douglass to
whom the bond was delivered and in effect canceled. It may
have been, and probably is, true that all of the parties acted
under the belief that the note of $1,422 was paid. Such, how-
ever, was not the effect of the payment to Rutherford, the
confederate states receiver, and ignorance of the law, under the
state of case here existing, will not prevent an equitable estop-
pel. *Tolen v. Nelson*, 27 Barbour, 505.

Thus considering the question of lien, we must hold that
there exists none which can be asserted as against the lots so
purchased by Bernays, and that the court below erred in ren-
dering a decree in favor of Feild & Dolly for the sum paid by
them to Benedict, Hall & Co., and charging the lots conveyed
to Bernays with the payment thereof.

Rector, who was a defendant in the original bill, filed his
cross bill against Feild & Dolly and Bernays. And Bernays
also filed a cross bill against Rector; both of which were dis-
missed with costs upon final decree.

Rector, in his cross bill, sets forth no facts upon which he
could claim the interposition of a court of chancery. He seeks
to enjoin several notes executed by him to Douglass, and
which were paid for and assigned by Douglas to Bernays, who

had a clear right to an action at law against Rector, who should have made his defense at law, or have averred such facts as showed he had a defense which he could only assert in a court of equity, which he failed to do.

Bernays had obtained a judgment at law against Rector, on the notes assigned to him by Douglass, and clearly had no right to further redress. It appears that his cross bill was dismissed, and we think properly. But upon what ground, after having dismissed both cross bills, the court proceeded to render a decree perpetually injoining Bernays' judgment at law, we are at a loss to conceive. The decree perpetuating the injunction must be reversed.

Feild & Dolly's right to equitable relief was based upon their right of lien upon the land which they had sold to Rector, and we have held that they had parted with their lien by the transfer of Douglass' bond to Bernays, and were estopped from asserting the lien. Their right to a decree in equity must fail. Whatever rights they may have acquired by force of the re-assignment of Rector's note to them by Benedict, Hall & Co., are clearly at law.

Let the decree dismissing the cross bills of Bernays and Rector be affirmed, and a decree rendered reversing that part of the decree which injoins Bernays' judgment against Rector, and a decree dismissing Feild & Dolly's bill be rendered in this court, with costs.